UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────

ANDREA LaPIETRA, Individually and
as Power of Attorney, and DEASHON TARVER,

                              Plaintiffs,

          v.                                                    9:19-CV-1527
                                                                (TJM/TWD)

CITY OF ALBANY POLICE DEPARTMENT, *et al.*,

                              Defendants.

─────────────────────────────────────

APPEARANCES:

ANDREA LaPIETRA
*Plaintiff, pro se*

DEASHON TARVER
*Plaintiff, pro se*

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

## I.      INTRODUCTION

        This action was commenced by two pro se plaintiffs, Deashon Tarver ("Tarver") and Andrea

LaPietra ("LaPietra"), individually and "as Power of Attorney" for Tarver, pursuant to 42 U.S.C. §

1983 ("Section 1983").  Dkt. No. 1 ("Compl.").  A complete history of this action to date can be found

in prior Decisions and Orders, including this Court's Report-Recommendation and Order issued on

October 5, 2020.  *See* Dkt. No. 4, 11, 13, and 24 (the "Oct. Report-Rec.").

        Presently before the Court is Plaintiffs' Amended Complaint.  Dkt. No. 33 ("Am. Compl.").

## II.     THE COMPLAINT AND OCT. REPORT-REC.

1

In the original Complaint, Tarver asserted the following claims: (1) Fourth Amendment claims for unreasonable search and seizure, false arrest, excessive force, and malicious prosecution; (2) Fourteenth Amendment claims for excessive force, failure-to-protect, and conditions of confinement; (3) First Amendment retaliation claims; (4) Fourteenth Amendment claims related to his medical and dental care; (5) Fourteenth Amendment due process claims; (6) First Amendment access to court and mail interference claims; (7) constitutional claims related to the grievance process; (8) Fourteenth Amendment equal protection claims; (9) Sixth Amendment claims related to the right to counsel; (10) state law claims; and (11) claims pursuant to the Americans with Disabilities Act ("ADA"). *See generally*, Compl. LaPietra asserted the following claims: (1) Fourth Amendment claims for unreasonable search and seizure and false arrest; (2) state law claims; and (3) First Amendment freedom of religion claim. *See id.*

Following review of the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), this Court issued a Report-Recommendation and Order dated October 5, 2020 (the "Oct. Report-Rec.") and recommended that Plaintiffs' claims against City of Albany Police Department and Albany County Correctional Facility, be dismissed with prejudice. Dkt. No. 24 at 33. This Court also found that Tarver's Fourteenth Amendment excessive force and failure-to-protect claims against defendants Corrections Officers Burns ("Burns") and Remillard ("Remillard") and LaPietra's First Amendment *Monell* claim against Albany County were sufficiently plead. *Id*. at 33-34. The undersigned recommended dismissal of all remaining claims without prejudice with leave to amend. *Id*. at 34.

In a Decision and Order issued on November 30, 2020 (the "November Order"), the Court accepted and adopted the Oct. Report-Rec. Dkt. No. 32.

2

III.     **SUMMARY OF AMENDED COMPLAINT**[1]

The Amended Complaint, like the original pleading, is a rambling, disjointed mix of

allegations, legal articles, statutes, and caselaw.  The pleading is 263 pages and includes 49 pages of

exhibits.  The Court will employ its best efforts to discern Plaintiffs' claims.

In the Amended Complaint, Plaintiffs identify new defendants: Officer Keith Johnson, Officer

Peterson, Officer John Doe #1, Officer John Doe #2, Officer John Doe #3, Officer John Doe #4,

Officer John Doe #5, Officer John Doe #6, Officer John Doe #7, Sergeant/Lieutenant Doe #8, Plain

Clothes Officer Doe #9, Parole Officer Jane Doe #1, Parole Officer Jane Doe #2, Officer John Doe

#10, Officer John Doe #11, Corrections Officer Durocher, Corrections Officer Haley, Corrections

Officer "505", Corrections Officer Criscione, Silver Masaba, MD, Vladislav Voss, D.D.S., NP Anna

Paulino, and Nurse Jane Doe #3.[2]  *See* Am. Compl. at 1.  Plaintiffs also assert claims against

previously dismissed defendants, Officer Jan Mika, Officer Adam Iannacito, and the City of Albany.[3]

*See id.*

On December 14, 2016, Plaintiffs were at LaPietra's second-floor apartment located at

1030 Washington Avenue, #2, in Albany, New York.  Am. Compl. at 9.  LaPietra left "to pick

something up" and Tarver stayed at the apartment.  *Id.*

According to Tarver, he was "coming down the stairs, and had the door to stairwell open a

crack," and he and Officer Johnson "saw each other through the glass cutout window in the door to the

---

[1]  The Amended Complaint includes exhibits.  *See* Dkt. No. 33-1 and 33-2.  To the extent that the exhibits are relevant to the incidents described in the Amended Complaint, the Court will consider the documents.  *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

[2]  The Clerk of the Court is directed to add these defendants to the docket report.

[3]  *See* Footnote 2, *supra*.  Plaintiffs' attempt to reassert claims against Albany County Police Department and Albany County Correctional Facility is improper as these claims were previously dismissed, with prejudice.

house/vestibule." Am. Compl. at 13. Officer Johnson "pushed in on the door to the house and entered into the vestibule while [Tarver] was still in the stairwell." *Id*. Officer Johnson asked Tarver what he was doing there and Tarver said he lived there. *Id*. Officer Johnson handcuffed Tarver and entered the apartment, through a closed door. *Id*. Parole Officers Jane Doe #1 and Doe #2 arrived at the scene and entered the apartment. *Id.* at 15.

When LaPietra returned to the apartment, "in excess of six uniformed police officers" were present and Tarver was "sitting and being detained handcuffed in the back seat of a police vehicle that was parked in front of the apartment" with Officer John Doe #1. Am. Compl. at 9-10, 14. LaPietra claims that her "apartment was open and the police had been through the apartment and all the personal belongings." *Id.* at 16. Officers John Doe #2 and John Doe #3 detained LaPietra on the driveway while she was questioned by Sergeant Doe #8. *Id*. LaPietra told the Sergeant, out loud, that Tarver did not live with her, but admitted he sometimes stayed overnight "with the permission of his PO." *Id.* at 16, 19-20. Sergeant Doe #8, Officer John Doe #4, and Officer John Doe #5, entered the apartment with LaPietra and continued to question her about items that they suspected were stolen. Am. Compl. at 16-17. Officer Mika and Officer John Doe #9 arrived at the scene. *Id*. at 15. Officer Mika asked LaPietra questions, documented her information, and "stood by" as officers entered the residence. *Id*. at 12, 18, 21.

In the Amended Complaint, LaPietra states, "the police and parole officers [. . .] could not have [. . .] probable cause that [Tarver] lived there because they had his wallet, N.Y.S. ID, parole blue card, and numerous other identifying documents and failed to check it before illegally entering and searching the residence." Am. Compl. at 18. Plaintiffs also assert that Officer Johnson, Sergeant John Doe #8, Officer John Doe #4, and Officer John Doe #5 entered the residence with the knowledge that

Tarver did not live there. *Id*. at 20.   During the course of Tarver's arrest, officers "threatened" Tarver with a Taser and "whisper[ed] that they could get him for resisting arrest[.]"  *Id*. at 30.  Tarver was arrested without a warrant and charged with petty larceny.  *Id*. at 2, 22.

Plaintiffs claim that Sergeant John Doe #8 "participated" in Tarver's arrest, was responsible for the supervision of the defendant police officers, failed to intervene and prevent the ongoing misconduct of the officers, "which resulted in the arrest and prosecution" of Tarver.  Am. Compl. at 24.

Later that evening, "officers" took Tarver from the police station to the emergency room at Albany Medical Center because "he tried to hurt himself[.]" Am. Compl. at 109.  At the emergency room, Tarver was permitted to use the bathroom once, with an escort, without incident.  *Id*. at 112.  However, Tarver's subsequent request to use the bathroom was denied.  *Id*. at 109-112.  Tarver was told to remain seated, and when he "could not," Officer Iannacito, Officer John Doe #10, and Officer John Doe #11 tackled him onto a bed, "used force on him" and cut off his clothes.  *Id*. at 112.  In the "course of tackling" Tarver, Officer Iannacito fractured Tarver's "pinky finger" and the officers aggravated Tarver's preexisting "AC separation."  Am. Compl. at 109-110, 112.  Tarver's hands and feet were "completely shackled" at the time.  *Id*. at 110.  Tarver was charged with felony assault on the officer.  *Id*. at 2.

From December 2016 until April 2018, Tarver was confined at Albany County Correctional Facility ("Albany County C.F.").  During his confinement at Albany County C.F., Tarver did not receive proper medical care for his "AC separation."  Am. Compl. at 132, 146.  Although x-rays were taken of Tarver's shoulder, he was told by "a doctor" that, "[w]e don't do surgery here."  Am. Compl. at 132-133, 197.  Tarver received no other treatment or care for his shoulder complaints and his requests

5

for an MRI and a visit with his personal physician were denied.  Dkt. No. 33-1 at 21-22.  During a visit, defendant Officer Criscione saw LaPietra touching Tarver's shoulder and approached Tarver because she "thought the lump on his shoulder was contraband."  Am. Compl. at 131, 135; Dkt. No. 33-1 at 22.  Criscione repeatedly asked what was under Tarver's shirt and LaPietra advised that it was an injury.  Am. Compl. at 135.  Criscione "checked under his shirt" but "didn't care he had an injury." *Id.*

During his confinement, Tarver was also denied adequate dental care.  Am. Compl. at 195; Dkt. No. 33-1 at 22.  Tarver "wait[ed] months to see a dentist" despite submitting numerous medical call slips.  Am. Compl. at 195.  On October 5, 2017, LaPietra told Officer "505" that Tarver was not receiving proper care and asked the officer to "look into Deashon's mouth."  *Id*.  The officer stated that he was not a dentist, told Tarver to "drop a slip," and stated "[w]e don't do root canals here[.]"  *Id.*

In late October 2017, a nurse informed Tarver that he would "see the dentist in five days" and gave him Motrin for his pain.  Am. Compl. at 196.  When Tarver saw the dentist, he was told that there was an "issue with his wisdom teeth and a filling in another tooth" but the dentist "did nothing."  *Id*.  In November 2017, Tarver was given Amoxycillin however, the facility records do not indicate that he suffered from decay or infection.  *Id.*  As a result, Tarver had a "tooth fall straight out of his mouth" while at Albany County C.F.  *Id*. at 197.

On March 9, 2018, Tarver received a letter from Prisoner Legal Services.  Am. Compl. at 2, 137.  On March 12, 2018, Plaintiffs filed "preliminary papers in State Supreme Court" for an extension of time to file a notice of claim.  *Id*. at 2.  On March 13, 2018, Tarver was assaulted while the officers performed "a squat and cough" in Tarver's cell.  *Id.* at 2, 137, 217-218.  Officer Burns pushed Tarver onto the bed, punched him in the face, and sprayed him with mace.  *Id*. at 218, 222.  At the time of the

6

assault, Tarver was naked and in a squat position, with his back facing the officers.  Am. Compl. at

222.  Officers Remillard, Durocher and Haley were present during the assault and did not intervene on

Tarver's behalf.  *Id*. at 218.  As a result of being sprayed with mace, Tarver suffered swelling and

burning in his eyes.  *Id.* at 219.

On March 15, 2018, LaPietra visited Tarver.  Am. Compl. at 2, 221.  At that time, Burns was

"laughing" about the assault and told LaPietra that Tarver was a "bad boy," who hadn't coughed for

him.  *Id*. at 221.

After the incident, Tarver was placed in "lockdown" without any writing utensils or access to

his mail.  Am. Compl. at 2, 137.  The "charges" surrounding his lockdown were not properly or timely

presented to him, he was not provided with an assistant related to the disciplinary charges, and he was

terminated from his job.  *Id*. at 238-39.  Tarver was "blocked from and denied grievances," denied

books, deprived of his job, denied phone calls, and denied exercise and outdoor recreation.  *Id*. at 137,

154.  Tarver was "kept in solitary confinement 24 hours a day."  *Id*. at 154.

Tarver also experienced "issues" with his legal mail at Albany County C.F.  Am. Compl. at

193.  For example, Tarver sent a letter "Judge Keefe," a "consultant" with the Center for Law and

Justice.  *Id*. at 193-94.  Tarver marked the envelope "Attorney Mail" and placed an address on it.  *Id.*

The mail did not reach the intended recipient and "may have affected his rights to bring a claim against

the municipality in a timely manner."  *Id*.

On April 5, 2018, Tarver was released from "solitary confinement" and transferred to

Downstate Correctional Facility.  Am. Compl. at 2.

Construing the Amended Complaint liberally, Tarver asserts the following: (1) Fourth

Amendment claims for illegal search and seizure, false arrest, and malicious prosecution; (2)

7

Fourteenth Amendment claims for excessive force, failure to protect, deliberate medical indifference, and conditions of confinement; (3) First Amendment retaliation claims; (4) Fourteenth Amendment due process and equal protection claims; (5) First Amendment access to court and mail interference claims; (6) constitutional claims related to the grievance process; (7) Sixth Amendment claims related to the right to counsel; (8) state law claims; and (9) claims pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. LaPietra asserts Fourth Amendment claims for unreasonable search and seizure.

Plaintiffs seek unspecified injunctive relief and monetary damages. Am. Compl. at 258-59. For a more complete statement of Plaintiffs' claims, reference is made to the Amended Complaint.

## IV.    SUFFICIENCY OF AMENDED COMPLAINT

The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to 28 U.S.C. § 1915A(b) and § 1915(e) was discussed at length in the Oct. Report-Rec. and it will not be restated in this Decision and Order. *See* Dkt. No. 24 at 2-5. The Court will construe the allegations in the Amended Complaint with the utmost leniency. *See, e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a pro se litigant's complaint is to be held "to a less stringent standards than formal pleadings drafted by lawyers.").

### A.    Claims Arising from Incidents on December 14, 2016

#### 1.    Fourth Amendment and Related State Law Claims

In the November Order, the Court adopted the recommendations in the Oct. Report-Rec. and dismissed Plaintiffs' Fourth Amendment claims arising out of alleged wrongdoing at LaPietra's residence on December 14, 2016, for failure to adequately plead that any individual was personally involved. Dkt. No. 24 at 16-19; Dkt. No. 32 at 3.

In the Amended Complaint, Plaintiffs identified Officers Johnson and Peterson, as the "arresting officers," and named nine Doe Police Officers and two Doe Parole Officers in the caption.

Mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that Plaintiffs' § 1983 Fourth Amendment claims for illegal search, seizure, false arrest and state law claims against defendants Johnson, John Doe #1, John Doe #2, John Doe #3, John Doe #4, John Doe #5, Jane Doe #1, Jane Doe #2, Sergeant Doe #8, and Officer Mika are sufficiently plead and survive review.[4]

A different conclusion is reached however, with respect to Peterson, John Doe #6, John Doe #7, and John Doe #9.  In order to recover money damages in a civil rights action, a plaintiff must plead enough facts to make a plausible showing that a defendant was directly or personally involved in the alleged constitutional violation.  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Farrel v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006).  Conclusory allegations without any supporting factual allegations are insufficient to state a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although Plaintiffs contend that Peterson, John Doe #6, John Doe #7, and John Doe #9 were "present at the residence" on December 14, 2016, the Amended Complaint lacks any factual allegations that plausibly show that Peterson, John Doe #6, John Doe #7, and John Doe #9 were involved with the violation of Plaintiffs' constitutional rights in connection with the alleged illegal search and seizure.  Therefore, the Court recommends that the claims be dismissed against the aforementioned defendants.

**2.      Fourteenth Amendment and Related State Law Claims**

---

[4] Because Plaintiffs' Fourth Amendment claims are asserted against officers whose names are not known to Plaintiffs, service of process cannot be effected on them unless and until these individuals have been identified by name.  If Plaintiffs wish to pursue claims against the Doe defendants, they must take reasonable steps to ascertain through discovery the identity of those individuals.  Upon learning the identities of the unnamed defendants, Plaintiffs must amend the operative pleading to properly name those individuals as parties.

In the amended pleading, Tarver claims that Iannacito, John Doe #10, and John Doe #11 used excessive force in the Emergency Room of Albany Medical Center while he was restrained in shackles and that he was prevented from using the bathroom in violation of his due process rights. *See* Am. Compl. at 112, 176. Tarver also asserts state law claims for assault, battery, and negligent infliction of emotional distress. *Id.* at 112, 163-66, 176.

The law related to Fourteenth Amendment excessive force claims was discussed in the Oct. Report-Rec. and will not be restated herein. Dkt. No. 24 at 23-24. Mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, *Sealed Plaintiff*, 537 F.3d at 191, the Court finds that Tarver's Fourteenth Amendment excessive force claims and state law claims against Iannacito, John Doe #10, and John Doe #11 are sufficiently plead.[5]

With respect to Tarver's due process claim, the Court finds that this allegation is not sufficiently plead. Plaintiffs concede that Tarver used the bathroom at the hospital, once "without incident." Am. Compl. at 112. Because Plaintiffs have not plead how long Tarver was denied the right to use the bathroom, the pleading does not sufficiently state a constitutional violation. *See Turner v. Procopio*, No. 13-CV-693, 2020 WL 2220244, at *11 (W.D.N.Y. Mar. 27, 2020) (collecting cases), *adopted*, 2020 WL 2219503 (W.D.N.Y. May 7, 2020), *appeal dismissed sub nom. Turner v. Doe*, No. 20-1816, 2020 WL 7329107 (2d Cir. July 8, 2020); *Allah v. Murphy*, No. 9:14-CV-0438 (GTS/TWD), 2016 WL 4401069, at *11 (N.D.N.Y. May 16, 2016) (holding that a temporary deprivation of bathroom privileges does not give rise to a protected liberty interest), *adopted*, 2016 WL 4386013 (N.D.N.Y. Aug. 17, 2016), *aff'd*, 699 Fed. App'x 41 (2d Cir. 2017).

### 3.    *Monell* Claims Against the City of Albany

---

[5] *See* Footnote 4, *supra*.

Tarver asserts *Monell* claims against the City of Albany related to the events that transpired in the Emergency Room.  The law related municipality liability was discussed at length in the Oct. Report-Rec. and will not be restated herein.  *See* Dkt. No. 24 at 14-15.  In the Oct. Report-Rec, the undersigned concluded that

> plaintiffs failed to identify or allege any facts plausibly showing the existence of a municipal policy or custom of the City of Albany authorizing, permitting, allowing, or tolerating "abuses in violation of the Constitution" including unreasonable search and seizure, false arrest, excessive force incidents or any affirmative link between such a policy and defendants' alleged actions with regards to Plaintiffs.

Dkt. No. 24 at 15.

Construing the Amended Complaint liberally, Tarver alleges that the City of Albany maintains a policy of "using force first and asking questions later[.]" Am. Compl. at 158-59.  However, Plaintiff does not articulate an independent basis to hold the City of Albany liable.  An "official policy or custom" can be shown in several ways: (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question; (3) a practice so consistent and widespread it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a failure by policymakers to train or supervise subordinates to such an extent it amounts to deliberate indifference to the rights of those who come in contact with the municipal employees. *Dorsett–Felicelli, Inc. v. Cty. of Clinton*, 371 F. Supp. 2d 183, 194 (N.D.N.Y. 2005) (citing *Monell*, 436 U.S. at 690-91).  "Custom denotes persistent and widespread practices, and thus proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell...." *Ahern v. City of Syracuse*, 411 F. Supp. 2d 132, 139 (N.D.N.Y. 2006) (punctuation and citation omitted). Accordingly, the Court recommends that Tarver's *Monell* claims against the City of Albany be

dismissed.

### 4.     Timeliness of Claims

Before the Court can recommend that Defendants be directed to respond to the Fourth and Fourteenth Amendment claims, the statute of limitations must be addressed.  As discussed in the Oct. Report-Rec., Tarver executed the Complaint on February 6, 2020, and therefore, any § 1983 claims arising out of incidents that occurred on December 14, 2016,[6] are time barred unless Tarver can demonstrate that the limitations period was tolled or that the claims are otherwise timely.  Dkt. No. 24 at 19-21, 24-25.

In § 1983 actions, the applicable statute of limitations is the State's "general or residual statute for personal injury actions."  *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)) (alterations omitted).   In New York, a three year statute of limitations applies for personal injury actions and thus to Section 1983 actions.  *Id*.; *see also* N.Y. C.P.L.R. § 214(5).  Federal law determines when a Section 1983 action accrues, which has been held to be the time "when the plaintiff knows or has reason to know of the harm."  *Connolly v. McCall*, 254 F.3d 36, 41 (2d Cir. 2001) (citation omitted).

For example, Fourth Amendment claims for illegal searches and false arrest accrue at the time of the violation.  *See Giles v. Fitzgerald*, No. 5:20-CV-0980 (MAD/ML), 2020 WL 6287459, at *4 (N.D.N.Y. Oct. 27, 2020), *adopted*, 2021 WL 248048 (N.D.N.Y. Jan. 26, 2021) (citing *Dominguez v. Hendley*, 545 F.3d 585, 589 (7th Cir. 2008).  Similarly, § 1983 claims for excessive force, failure-to-intervene, and failure-to-protect claims accrue "when the use of force occurred."  *Fairley v. Collins*, No. 09-CV-6894, 2011 WL 1002422, at *3 (S.D.N.Y. Mar. 15, 2011); *see also Roundtree v. City of*

---

[6]  The reference in the Oct. Report- Rec. to incidents that occurred on "December 16, 2016," *see* Dkt. No. 24 at 20, is a typographical error.

*New York*, No. 1:15-CV-6582, 2018 WL 443751, at *3 (S.D.N.Y. Jan. 16, 2018).

With respect to the state law claims, Tarver's assault and battery and false arrest/imprisonment claims are intentional torts and thus, governed by a one-year statute of limitations. *See* Dkt. No. 24 at 20. Tarver's negligent infliction of emotional distress claim is governed by a three-year statute of limitations. *Dawkins v. Williams*, 413 F.Supp.2d 161, 178 (N.D.N.Y. 2006) (quoting *Dillon v. City of New York*, 704 N.Y.S.2d 1, 7–8 (1st Dep't 1999)). While assault and battery claims must be asserted within one year from the date of the incident, *see id.*, claims for false arrest or imprisonment do not accrue until "the date of the prisoner's release from confinement." *Lynch v. Suffolk Cty. Police Dep't, Inc.*, 348 Fed. App'x 672, 675–76 (2d Cir. 2009) (citation omitted).

Construing the Amended Complaint liberally, Tarver asserts that he "preserved" his claims because the original complaint was filed before the statute of limitations expired. Am. Compl. at 136. Additionally, Tarver alleges that equitable tolling applies because he was "under duress" while incarcerated at Albany County C.F. and unable to timely comply with the Court's directive to execute the pleading. *See id.* at 135.

In *Kalican v. Dzurenda*, 583 Fed. App'x 21, 23 (2d Cir. 2014), the Second Circuit held that a complaint is deemed filed when the Clerk of Court receives it. With respect to an unsigned complaint by a pro se prisoner, the Court reasoned that the pleading should be filed, with directions from the court to "fix any technical errors of legal procedure." *Id.* (citing *Toliver v. Sullivan Cnty.*, 841 F.2d 41, 42 (2d Cir. 1988) (holding that complaint was timely filed where the clerk's office received it prior to the expiration of the limitations period, but did not formally file it on the docket until after granting plaintiff's in forma pauperis application, at which point the limitations period had run)).

"[E]quitable tolling is considered appropriate where [ . . . ] a plaintiff was unaware of his cause

13

of action due to misleading conduct of the defendant or where a plaintiff's medical condition or mental impairment prevented him from proceeding in a timely fashion." *Antonmarchi v. Consol. Edison Co. of N.Y.*, 514 F. App'x 33, 36–37 (2d Cir. 2013) (citation and internal citation omitted).  "[E]quitable tolling may be appropriate where the plaintiff's failure to comply with the statute of limitations is attributable to the plaintiff's medical condition."  *Brown v. Parkchester S. Condominiums*, 287 F.3d 58, 60 (2d Cir. 2002).  The Second Circuit has "recognized that medical conditions, whether physical or psychiatric, can manifest extraordinary circumstances, depending on the facts presented." *Harper v. Ecole*, 648 F.3d 132, 137 (2d Cir. 2011); *see Brown v. Parkchester South Condominiums*, 287 F.3d 58, 60 (2d Cir. 2002) (equitable tolling may be appropriate where failure to comply is attributable to medical condition).

Here, the Complaint, dated December 5, 2019, was signed by LaPietra only.  *See* Compl. at 6. On December 10, 2019, the Complaint was filed with the Court, and docketed, without Tarver's signature.  *See* Compl. at 6.  In a Decision and Order filed on January 15, 2020 (the "January Order"), the Court ordered the Clerk to send Tarver a copy of the Complaint and directed Tarver to sign the Complaint within thirty days.  Dkt. No. 4.  On January 21, 2020, due to parole violations, Tarver was transferred to Downstate C.F.  Am. Compl. at 2, 145.  Upon his arrival, Tarver was in "lockdown" for five days.  *See* Dkt. No. 5 at 2. While confined at Downstate C.F., Tarver, who suffers from respiratory and psychiatric issues, was denied the use of his CPAP machine and psychotropic medications for his mental disorder.  *Id.* at 5; Am. Compl. at 145-46.  As a result, he suffered sleep deprivation and hallucinations.  Am. Compl. at 146.  On February 6, 2020, Tarver filed an executed copy of the Complaint.  Dkt. No. 7.

At this preliminary stage, Plaintiffs allegations are sufficient to survive.[7]  The Court recommends that Plaintiffs' § 1983 Fourth Amendment claims for illegal search, seizure, false arrest and state law claims against defendants Johnson, John Doe #1, John Doe #2, John Doe #3, John Doe #4, John Doe #5, Jane Doe #1, Jane Doe #2, Sergeant Doe #8, and Officer Mika be permitted to proceed.[8]  The Court further recommends that Tarver's Fourteenth Amendment excessive force claims and state law negligent infliction of emotional distress claim against Officers Iannacito, John Doe #10, and John Doe #11 also be permitted to proceed.[9]  The Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.[10]

A different conclusion is reached however, with respect to Tarver's assault and battery claims. These claims accrued on December 14, 2016, and are subject to a one-year statute of limitations.  Even affording Tarver the benefit of equitable tolling, the claims are well outside the applicable statute of limitations.  Accordingly, Tarver's state law assault and battery claims against Iannacito, John Doe #10, and John Doe #11 are time barred and, thus, it is recommended that the claims be dismissed.

---

[7]  In determining when a particular claim accrues, courts must focus on when "the plaintiff knows or has reason to know the injury which is the basis of his action." *Covington v. New York*, 171 F.3d 117, 121 (2d Cir. 1999) (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980)).  That is so even if "the full extent of the injury is not then known or predictable." *Fahs Const. Group, Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013) (per curiam).  Thus, Tarver's alternative argument; that the statutory period for claims arising in December 2016 was tolled because he was not aware of the full extent of his injuries until "well over six months into his stay at Albany County C.F.," *see* Am. Compl. at 10, lacks merit.

[8]  *See* Footnote 4, *supra*.

[9]  *See* Footnote 4, *supra*.

[10]  This preliminary finding does not preclude Defendants from filing motions related to the issue of timeliness. *See Guillory v. Ellis*, No. 9:11-CV-600 (MAD/ATB), 2013 WL 2145658, at *6 (N.D.N.Y. May 15, 2013) (citing *Snider v. Melindez*, 199 F.3d 108, 113 (2d Cir.1999)).

**B.     Claims Against Burns, Remillard, Durocher, and Haley**[11]

**1.     Fourteenth Amendment Claims**

In the Oct. Report-Rec., the Court found that Tarver's Fourteenth Amendment excessive force and failure-to-protect claims against Burns and Remillard survived initial review and required a response. Dkt. No. 24 at 24. As discussed *supra*, the Court recommended the assault and battery claims be deemed time-barred. *Id*. at 25. In the November Order, the District Court adopted the recommendations. Dkt. No. 32 at 4.

In the Amended Complaint, Tarver claims that two additional corrections officers were involved in the alleged "shakedown" of Tarver's cell and the use of force on March 13, 2018. *See* Am. Compl. at 217-18.

Mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, *Sealed Plaintiff*, 537 F.3d at 191, the Court finds that Tarver's § 1983 Fourteenth Amendment excessive force and failure-to-protect claims against Durocher and Haley survive review and require a response. The Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion. However, for the reasons set forth *supra*, it is recommended that the assault and battery claims be dismissed.

**2.     First Amendment Retaliation Claims**

The law related to retaliation claims was discussed in the Oct. Report-Rec. and will not be restated herein. *See* Dkt. No. 24 at 25-27. In the November Order, the Court dismissed Tarver's retaliation claims against Burns and Remillard reasoning:

Here, Tarver has not adequately stated a claim for retaliation against

---

[11] The Court assumes, for purposes of this Report-Recommendation and Order only, that Tarver was a pretrial detainee at the time of the alleged events giving rise to his claims.

> Burns and Remillard because he has not alleged facts to suggest that
> they were aware Tarver received a letter from Prisoner Legal Services
> or that LaPietra filed a lawsuit in state court. Moreover, there is no
> allegation that Burns or Remillard were defendants in that lawsuit.

Dkt. No. 24 at 27.

Although Tarver was given an opportunity to cure the defects in the claim, the facts alleged in the Amended Complaint do not plausibly suggest that Burns and Remillard retaliated against Tarver. Accordingly, for the reasons set forth in the Oct. Report-Rec., it is recommended that Tarver's retaliation claims be dismissed for failure to state a claim upon which relief may be granted.

### C. Fourteenth Amendment Deliberate Medical Indifference Claims

In the November Order, the Court adopted the recommendation that the constitutional claims related to Tarver's medical treatment against "Unknown Medical and Dental Workers" be dismissed due to the failure to identify any individuals personally involved. Dkt. No. 24 at 29-30; Dkt. No. 32 at 4.

In the Amended Complaint, Tarver identified Dr. Masaba, Dr. Voss, Nurse Paulino, C.O. Criscione, C.O. "505," and Nurse Jane Doe as defendants in the caption of the pleading. Am. Compl. at 1. Initially, the Court notes that Dr. Masaba, Dr. Voss, Nurse Paulino, and Nurse Jane Doe are not referenced anywhere in the body of the Amended Complaint. In the absence of factual allegations sufficient to plausibly suggest that these defendants were personally involved in conduct that violated plaintiffs' constitutional rights, the Amended Complaint fails to state a cognizable claim against them. *See Cipriani v. Buffardi*, No. 06–CV–0889 (GTS/DRH), 2007 WL 607341, *1 (N.D.N.Y. Feb.20, 2007) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff.") (citation omitted); *see also Casino v. Rohl*, No. 14-CV-2175, 2014 WL 5425501, at *6 (E.D.N.Y. Oct. 23, 2014) (dismissing complaint

17

since the plaintiff had not adequately pled the defendant's personal involvement in any of the constitutional deprivations alleged in the amended complaint).

With respect to C.O. Criscione and C.O. "505", Tarver alleges that Criscione was deliberately indifferent to his shoulder injury and that C.O. "505" was deliberately indifferent to his dental needs. *See* Am. Compl. at 135, 195.

Under the Fourteenth Amendment, deliberate indifference is measured from an objective perspective. *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017). While the second prong now varies from Eighth Amendment cases, the first prong remains the same. *See White v. City of New York*, No. 16 Civ. 6183, 2017 WL 3575700, at *3 (S.D.N.Y. Aug. 17, 2017) ("The objective prong is the same regardless of whether the plaintiff is a pretrial detainee or a prisoner."). To satisfy the second prong—concerning mens rea—the defendant must have behaved in an objectively reckless manner, or "knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 8949 F.3d at 35. "Although mens rea is assessed from an objective perspective, as opposed to the more demanding subjective recklessness standard employed in the Eighth Amendment context, negligence is still insufficient to give rise to a valid claim under the Fourteenth Amendment." *Smith v. Outlaw*, No. 15-CV-9961, 2017 WL 4417699, at *3 (S.D.N.Y. Sept. 30, 2017) (internal citation omitted). "Non-medical prison personnel engage in deliberate indifference where they 'intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problem known to the attendant prison personnel.'" *Baumann v. Walsh*, 36 F.Supp.2d 508, 512 (N.D.N.Y. 1999).

The Amended Complaint lacks any allegations plausibly suggesting that Defendants knew that Tarver suffered from a serious medical condition. Moreover, Tarver has not plead that he told Defendants he was in extreme pain or that Defendants, as non-medical personnel, withheld medical

care or delayed treatment.  Accordingly, the Court recommends that Tarver's Fourteenth Amendment deliberate medical indifference claims against C.O. Criscione and C.O. "505" be dismissed.

### D.   ADA

The law related to ADA claims was discussed in the Oct. Report-Rec. and will not be restated herein.  *See* Dkt. No. 24 at 27-29.  In the Oct. Report-Rec., the Court noted that it was "not clearly indicated" who Tarver was suing for ADA violations or whether the defendants were sued in their individual or official capacities, or both.  *Id.* at 28.  The Court noted that the ADA did not provide for claims for monetary damages against individual officers and recommended dismissing claims for monetary relief against the officers, in their official capacity, for failure to plead discriminatory intent. *Id*. at 28-29.  Moreover, the Court found that any claim for injunctive relief was rendered moot by Tarver's release from confinement.  *Id*. at 29.  The District Court adopted this reasoning in the November Order.  *See* Dkt. No. 32.

Despite the fact that Tarver was afforded the opportunity to amend his Complaint, the amended pleading does not cure the deficiencies in the original pleading related to these claims.  For the reasons set forth in the Oct. Report-Rec., it is recommended that the ADA claims be dismissed for failure to state a claim upon which relief may be granted.

### E.   *Monell* Claims Against Albany County

In the November Order, the Court dismissed Tarver's *Monell* claims against Albany County.  In the Oct. Report-Rec., the Court reasoned that:

> Plaintiffs have failed to identify or allege any facts plausibly showing the existence of a municipal policy or custom of Albany County authorizing, permitting, allowing, or tolerating "abuses in violation of the Constitution" including deliberate medical indifference and excessive force incidents or any affirmative link between such a policy and any defendants' alleged actions with regard to Tarver.

Dkt. No. 24 at 22.  The Court further noted that "conclusory allegations that Albany County failed to

train and supervise defendants, *see id.*, without supporting factual allegations, fails to state a *Monell*

claim against Albany County that is plausible on its face." *Id.*

Although Tarver was given an opportunity to cure the defects in his *Monell* claims against

Albany County, the Amended Complaint is devoid of any additional facts to state a plausible claim

against Albany County. Therefore, the Court recommends dismissing Tarver's *Monell* claims against

Albany County.

In the November Order, the Court found that LaPietra's First Amendment *Monell* claims

against Albany County survived initial review and required a response.  *See* Dkt. No. 32. at 4.  These

claims are not repeated or restated in the Amended Complaint.  The Court has thoroughly reviewed the

amended pleading and finds no allegations related to LaPietra's First Amendment religious claim or

any facts from which the Court could find that LaPietra's First Amendment rights were compromised.

While courts have noted that it is "sometimes difficult" to determine whether a pro se plaintiff intends

to abandon legal theories and whether to treat claims as "having been incorporated into the Amended

Complaint," *Pagan v. New York State Div. of Parole*, No. 98 CIV. 5840, 2002 WL 398682, at *4

(S.D.N.Y. Mar. 13, 2002) (citations omitted), the Court is not confronted with that issue.  Here,

Plaintiffs were explicitly cautioned that if they chose to file an amended pleading, "[a]ny such

amended complaint will replace the existing Complaint, and must be a whole integrated and complete

pleading that does not rely upon or incorporate by reference any pleading or document previously filed

with the Court."  Dkt. No. 24 at 34, n. 15.  Because the amended pleading "supercedes the original, and

renders it of no legal effect[,]" *Dluhos v. Floating & Abandoned Vessel, Known as New York*, 162 F.3d

63, 68 (2d Cir. 1998), the Court recommends dismissing LaPietra's First Amendment *Monell* claim

against Albany County.

**F.     Remaining Claims**

In the Amended Complaint, Tarver restates the following causes of action: (1) First Amendment claims related to mail tampering; (2) Fourteenth Amendment due process claims related to charges stemming from the March 2018 use of force incident; (3) Sixth Amendment right to counsel claims; (4) constitutional claims related to lack of access to grievance procedures; and (5) Fourteenth Amendment equal protection claims.  In the Oct. Report-Rec., the Court recommended that these claims be dismissed due to Tarver's failure to identify any corrections officers personally involved in these claims.  Dkt. No. 24 at 30.  In the November Order, the Court adopted the recommendations. Dkt. No. 32.

Despite the fact that Tarver was afforded the opportunity to amend his Complaint, the amended pleading does not cure the deficiencies in the original pleading related to these claims.  For the reasons set forth in the Oct. Report-Rec., it is recommended that these claims be dismissed for failure to state a claim upon which relief may be granted.[12]

In the Oct. Report-Rec., the Court discussed Rule 10(a) of the Federal Rules of Civil Procedure and advised

> . . . the Court will not construe the complaint to include any claims or causes of action against these individuals. For the same reason, the Court will not construe the complaint to include any claims or causes of action against other private individuals referenced in the body of the complaint, including attorneys and grocery store employees, as they are not identified as defendants in the caption of the complaint

---

[12]  Even assuming Tarver's claim related to access to the grievance procedure was sufficiently plead, the undersigned recommends dismissal because inmates do not have a protected interest in grievance procedures. "[I]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures do [ ] not give rise to a cognizable § 1983 claim." *Shell v. Brzezniak*, 365 F.Supp.2d 362, 369–370 (W.D.N.Y. 2005).

or list of parties.

Dkt. No. 24 at 31, n.13.

The Amended Complaint contains facts and allegations related to Tarver's confinement at Downstate Correctional Facility and Mohawk Correctional Facility.  *See* Am. Compl. at 3-4, 136-43. Tarver alleges that he was "denied medical and dental care" at Downstate C.F. and Mohawk C.F. and that he was harassed and threatened by "C.O. Goodiemonte" and "C.O. Fitsick".  *Id.*

For the reasons set forth in the Oct. Report-Rec., the Court will not construe the Amended Complaint to include any claims related to defendants not identified in the caption of the pleading of the list of parties.

V.     **CONCLUSION**

**WHEREFORE**, it is hereby

**ORDERED** that the Clerk of the Court revise the docket sheet to **ADD** the following individuals as defendants in this action: Officer Keith Johnson, Officer Peterson, Officer John Doe #1, Officer John Doe #2, Officer John Doe #3, Officer John Doe #4, Officer John Doe #5, Officer John Doe #6, Officer John Doe #7, Sergeant/Lieutenant Doe #8, Plain Clothes Officer Doe #9, Parole Officer Jane Doe #1, Parole Officer Jane Doe #2, Officer John Doe #10, Officer John Doe #11, Corrections Officer Durocher, Corrections Officer Haley, Corrections Officer "505", Corrections Officer Criscione, Silver Masaba, MD, Vladislav Voss, D.D.S., NP Anna Paulino, Nurse Jane Doe #3. Officer Jan Mika, and Officer Adam Iannacito; and it is further

**RECOMMENDED** that the following claims survive initial review and require a response: (1) LaPietra's Fourth Amendment claims for illegal search and seizure against defendants Johnson, John Doe #2, John Doe #3, John Doe #4, John Doe #5, Jane Doe #1, Jane Doe #2, Sergeant Doe #8, and

Officer Mika; (2) Tarver's Fourth Amendment false arrest and imprisonment claims, and related state law claims against defendants Officers Johnson, John Doe #1, John Doe #2, John Doe #3, John Doe #4, John Doe #5, Jane Doe #1, Jane Doe #2, Sergeant Doe #8, and Mika; (3) Tarver's Fourteenth Amendment excessive force claims and state law negligent infliction of emotional distress claims against Officers Iannacito, John Doe #10, and John Doe #11; and (4) Tarver's Fourteenth Amendment excessive force and failure-to-protect claims against Burns, Remillard, Durocher, and Haley; and it is further

**RECOMMENDED** that the remaining claims be **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; and it is further

**RECOMMENDED** that, if the Court adopts this Report-Recommendation and Order, that the following defendants be terminated from the docket report: Peterson, John Doe #6, John Doe #7, John Doe #9, C.O. 505, Criscione, Dr. Masaba, Dr. Voss, Nurse Paulino, Nurse Jane Doe #3, and Albany County; and it is further

**RECOMMENDED** that if the Court adopts this Report-Recommendation and Order, that, upon receipt from Plaintiffs of the documents for service, the Clerk shall issue summonses and forward them, along with copies of the Amended Complaint, to the United States Marshal for service upon the remaining identified defendants.  At that time, the Clerk shall also forward a copy of the summonses and Amended Complaint to the Office of the Albany County Attorney, together with a copy of this Decision and Order; and it is further

**RECOMMENDED** that a response to the Amended Complaint be filed by the remaining defendants, or his/her counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**RECOMMENDED** that Plaintiffs shall take reasonable steps through discovery to ascertain the identity of the Doe defendants; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.** Plaintiffs must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiffs are also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his or her address; their failure to do so may result in the dismissal of the action**; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Report-Recommendation and Order on Plaintiffs, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[13]  Such objections shall be filed with the Clerk of the Court.

---

[13]   If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE**

**APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir.1993) (citing *Small v. Sec'y of*

*Health and Human Svcs*., 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72.

      **IT IS SO ORDERED.**

Dated: April 9, 2021
      Syracuse, NY

Therese Wiley Dancks
United States Magistrate Judge

---

that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(c).